UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHRISTOPHER FUGATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-105 |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Christopher Fugate applied for child disability benefits, alleging that he was unable to work primarily due to an autism spectrum disorder. An ALJ found, however, that Mr. Fugate could still hold a significant number of jobs in the national economy, so his claim was denied. Mr. Fugate filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings due to alleged errors with the residual functional capacity assessment, alleged flaws in the ALJ's evaluation of testimony, and alleged errors in the assessment of jobs available in the national economy. The Commissioner filed a response in opposition. For the reasons set forth below, the Court remands the ALJ's decision.

## I.  FACTUAL BACKGROUND

Mr. Fugate applied for child disability benefits on July 7, 2015, alleging that he became disabled beginning on February 23, 2005.[1] After holding a video hearing, the ALJ ordered a consultative psychological examination to aid him in determining the intensity, persistence, and limiting effects of Mr. Fugate's symptoms. The psychological examination revealed that Mr. Fugate's verbal reasoning abilities were in the high average range, he was average nonverbal

---

[1] An individual is eligible for "child's benefits" on the earnings record of an insured parent if he can prove that he was disabled prior to age 22. See generally 20 C.F.R. § 404.350.

reasoning abilities, average ability to sustain attention, concentrate, and exert mental control, and very low average ability to process simple or routine visual material. (R. 473-475).

The ALJ found that Mr. Fugate suffered from the severe impairment of autism spectrum disorder prior to attaining the age of 22. However, the ALJ also found that Mr. Fugate did not have an impairment or combination of impairments that met a listing requirement at step three. (R. 20). The ALJ referenced the various other complaints that Mr. Fugate had including a sebaceous cyst, asthma, a lump on his cheek, and vomiting, but noted that the evidence failed to demonstrate that any of those complaints were significant. (R. 20). The ALJ also noted that Mr. Fugate was not hospitalized for any of those complaints and the treatment he received improved them. *Id*. Thus the only severe impairment at issue here is Mr. Fugate's autism spectrum disorder. When assessing whether the "paragraph B" criteria were satisfied, the ALJ found only moderate limitations. (R. 21-22). At the hearing, the ALJ determined that additional medical records and a psychological exam were needed before he could determine Mr. Fugate's RFC. (R. 82-83). After receiving the records and the results of Mr. Fugate's exam, the ALJ submitted a hypothetical and several additional questions to a vocational expert. (R. 297-299). Based on the vocational expert's testimony, the ALJ found that Mr. Fugate could still perform work in the national economy and therefore was not disabled. After the Appeals Council denied review, Mr. Fugate filed this action seeking review of the Commissioner's decision.

## II.  STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019); 42 U.S.C. § 405(g). Substantial evidence consists of "such relevant evidence

2

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the ALJ's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, then in between steps three and four, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ then uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. Fugate offers three arguments in favor of remand. First, Mr. Fugate argues that the ALJ erred by failing to account for his moderate limitations in concentrating, persisting, or maintaining pace and in adapting and managing himself in the RFC assessment. Second, he argues that the ALJ's evaluation of Mr. Fugate's and Mr. Glick's statements was flawed. Finally, Mr. Fugate argues that the ALJ erred in relying on VE testimony that was inconsistent with the DOT in his step five determination. Since the Court finds Mr. Fugate's second argument to be the most persuasive, it will not address the others which may be reconsidered on remand. The Court agrees that remand is required because the RFC analysis was affected by the ALJ's credibility analysis of Mr. Glick's testimony, and the ALJ failed to support the credibility determination with substantial evidence.

### A.  Credibility Analysis

Mr. Fugate argues that the ALJ's credibility determinations were flawed. He argues that the reasons the ALJ provided for discrediting Mr. Glick's testimony do not withstand scrutiny and the ALJ erred when he ignored the reasons Mr. Glick gave for why Mr. Fugate does not receive treatment for his anxiety. [DE 16]. Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16-3p; *see also Pepper v. Colvin,* 712 F.3d 351, 368 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Id.*; *Myles v. Astrue*, 582 F.3d 672, 676

(7th Cir. 2009) ("But it is not that the error requires a different finding; rather, the ALJ's basis for his credibility determination on this issue is wrong, and so the ALJ must reconsider the credibility determination in light of the evidence.").

The Court finds that the ALJ committed these errors here, and that as a result, his credibility finding is not supported by substantial evidence.

### i. Discrediting Mr. Glick's Testimony

At the hearing with the ALJ, both Mr. Fugate and Mr. Glick testified to Mr. Fugate's difficulty with interacting with people. Mr. Fugate testified to how he was isolated once he reached high school (R. 53) and how his anxiety makes it hard for him to manage different situations (R. 63). Mr. Glick explained how experiencing any kind of deviation in his daily activities causes Mr. Fugate "an extreme amount of stress and [how] he almost mentally locks up and becomes fixated on that issue." (R. 68). Mr. Glick also stated that he thought Mr. Fugate would need a person to act as a buffer in his relationships with employees and employers. (R. 73). Mr. Glick described having to intervene and troubleshoot for Mr. Fugate when his frustration level increased on an almost daily basis. (R. 75). Notably, when responding to the ALJ's question about the biggest difficulty Mr. Fugate has with other people, Mr. Glick stated, "His ability to really communicate and I think it feels as if he is extremely anxious at every point he's trying to communicate." (R. 76).

As stated earlier, because the ALJ is in the best position to determine a witness truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler*, 688 F.3d at 310-11. The ALJ's decision must, however, provide specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. SSR 16-3p; *see also Pepper*, 712 F.3d at 367. An ALJ also may not ignore evidence. *Myles*, 582 F.3d at 676. Finally, and relevant to this discussion, an ALJ may not disregard subjective allegations "solely" because the allegations are not confirmed by objective medical evidence. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015).

First, the ALJ found that the allegations concerning the intensity, persistence, and limiting effects of Mr. Fugate's symptoms were not entirely consistent with the medical evidence and other evidence in the record. The ALJ went on to discount Mr. Glick's testimony by stating that he was "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms" and that he could not be considered "a disinterested third party witness." (R. 23). These are not adequate reasons to discount Mr. Glick's testimony. Notably, the Social Security rules "instruct[] ALJs to obtain relevant information from sources such as 'neighbors, friends, relatives, and clergy'" . . . [and] "[t]he Ruling specifically defines these individuals as 'nonmedical' sources, *id.*, which reflects a conclusion that their information should be taken into consideration notwithstanding that fact." *Molly K. v. Saul*, 2019 WL 3857885, at *11 (N.D. Ill. Aug. 16, 2019). "The regulations permit testimony from 'other persons' such as family members without requiring them to have medical training." *Teschner v. Colvin*, 2016 WL 7104280, at *9 (N.D. Ill. Dec. 6, 2016). Moreover, "to reject testimony—either the claimant's, or that of another lay person such as a member of the claimant's family—the ALJ must specifically conclude that the testimony is not credible." *McGee v. Bowen*, 647 F. Supp. 1238, 1246 (N.D. Ill. 1986) (citing *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir. 1985)).

7

Here, the ALJ found that Mr. Glick's testimony was not consistent with the opinions and observations of the medical doctors in the case. *Id*. But, the ALJ did not address the contrary evidence supplied by Mr. Glick regarding Mr. Fugate's anxiety. At the hearing, Mr. Glick testified that "[w]hen it comes to I guess his abilities generally speaking, I do worry about not having a, kind of person there that would be able to act as a buffer in his relationships with employees and employers." (R. 73). Despite extensive testimony from Mr. Glick regarding Mr. Fugate's difficulty with interacting with people and experiencing non-routine situations throughout his day, the ALJ did not give his opinion significant weight because it was "simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." (R. 23). Yet in his consultative exam, Dr. Boen noted that "Christopher has at times felt sad and depressed, has at times had trouble concentrating and focusing, has been fearful and afraid, has been nervous in social situations and has had anxiety." (R. 480). Despite these findings, Dr. Boen concluded that Mr. Fugate could concentrate on the job, stay on task, get along with coworkers, and get along with a boss. (R. 483). Dr. Jacobs made no reference to Mr. Fugate's anxiety and instead found that "[h]e functions well on his own – cooks and cleans and can contribute to society in a positive manner." (R. 509). The ALJ failed to adequately address this line of evidence demonstrating Mr. Fugate's anxiety and how that might affect his ability to meet the requirements of full-time employment.

Second, in discounting Mr. Glick's testimony concerning the persistence and limiting effects of his anxiety, the ALJ also relied heavily on Mr. Fugate's ability to engage in a range of activities. The ALJ went on to cite that Mr. Fugate lives in a house alone, takes medication without reminders, prepares his own meals, completes basic housework, drives his car, goes out alone, pays bills, uses a checkbook (with supervision from his guardian), completes puzzles,

8

goes to church several times per week, has no problems reading, and takes trips to large cities by himself. (R. 23-24). But the ALJ failed to address how Mr. Fugate's daily activities necessarily translated into an ability to work full-time, nor did the ALJ address how the ability to perform these routine activities is inconsistent with Mr. Fugate's and Mr. Glick's testimony concerning the severity of his anxiety. *See Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("[I]t is proper for the Social Security Administration to consider a claimant's daily activities in judging disability, but we have urged caution in equating these activities with the challenges of daily employment in a competitive environment . . . ."). While Mr. Fugate does participate in a wide range of activities, this ignores the testimony from both Mr. Fugate and Mr. Glick explaining the amount of anxiety he experiences when participating in activities outside of his normal routine and how Mr. Glick must help him on a regular basis.

"[A]n ALJ's decision must be based upon consideration of all the relevant evidence." *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). And while the ALJ is not required to address every piece of evidence or testimony presented, "the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544. "Careful consideration must be given to *any* available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96–8p; *Siegel v. Colvin*, 2014 WL 4388149, at *5 (N.D. Ind. 2014) (emphasis added). And if evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). As it appears from the record, Mr. Glick spends a significant amount of time with Mr. Fugate as his guardian and has had the opportunity to observe him in a variety of situations. The ALJ did not adequately address the

anxiety testified to by both Mr. Fugate and Mr. Glick when determining the RFC. When considering Mr. Glick's guardianship of Mr. Fugate, the ALJ found that the record did not support a finding that he has difficulties interacting at times and stated that some social limitations of function were included in the RFC. (R. 26). While neither of the state agency consultants made any findings related to Mr. Fugate's anxiety,[2] other pieces of the record demonstrate his struggles with it.

For example, Mr. Glick referenced the altercation Mr. Fugate had with his mother when Mr. Fugate's stress level escalated and how "nobody was there with him when that situation spiraled out of control," which the ALJ only mentions in passing. (R. 73). In fact, the record indicates that prior to 2011, Mr. Fugate was "under the care [of] a mental health provider and given medications due to autism." (R. 194). Mr. Fugate was incarcerated as a result of the altercation with his mother, but the Presentence Report indicates that Mr. Fugate was caring for his mother with dementia and that he was very remorseful for what happened. (R. 195). The Report also states how the defendant is autistic, how he has a hard time communicating with others, and how it can be very difficult to communicate with him. (R. 197). This tends to fall into the same line of evidence of Mr. Glick's testimony demonstrating that Mr. Fugate has difficulty managing stressful situations and Mr. Glick stated that it was "another instance of him mentally losing control" without help or guidance. (R. 73). It is well-established that, while the ALJ need not address every piece of evidence in the record, he cannot ignore an entire line of evidence that contradicts his findings. *Zurawski*, 245 F.3d at 888.

Finally, the ALJ failed to take a holistic view of the evidence and failed to build an accurate or logical bridge from Mr. Glick's testimony and other information available in the

---

[2] Dr. Boen referenced Mr. Fugate's anxiety but made no findings associated with it and ultimately found he was able to work a full-time job. (R. 480).

10

record regarding the anxiety Mr. Fugate experiences and the limitations included in the RFC. The Commissioner argues that the ALJ "took special care to provide limitations that would prevent [Fugate] from being overwhelmed or decompensating," which is likely reflected in the limitations of the tasks remaining the same from day-to-day. [DE 17 at 6]. But the limitation of superficial interaction with others may not be enough to adequately address the anxiety and stress Mr. Fugate experiences when communicating with other people, which is demonstrated in the record. Here, the ALJ did not "competently grapple[] with competing evidence and provide[] legitimate reasons for favoring certain pieces of evidence over others." *Stepp v. Colvin*, 795 F.3d 711, 721 (7th Cir. 2015). Instead, the ALJ marginalized Mr. Glick's testimony without a sound explanation despite his considerable familiarity and experience with Mr. Fugate's limitations. Therefore, the ALJ's findings are not supported by substantial evidence and the decision must be remanded.

### ii. Ignoring Reasons for Failure to Seek Treatment

Elsewhere in the opinion, the ALJ also seemingly discredited Mr. Fugate for the lack of ongoing mental health treatment. (R. 24). In his opinion, the ALJ stated the following: "[T]here is not ongoing mental health treatment, there are not ongoing skills training or therapies through any provider that would indicate an inability to perform even the simple work described above without being frequently off task, requiring frequent redirection, or excessive supervision and overwatch." (R. 24). Yet, while noting that Mr. Fugate did not regularly participate in mental health treatment, the ALJ did not recite the reasons Mr. Glick gave at the hearing for Mr. Fugate's failure to do so and thus, should not have drawn negative inferences from this failure. *See Myles*, 582 F.3d at 677; *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (quoting *Craft*, 539 F.3d at 679). This is especially important here because Mr. Glick testified that there are not a

11

lot of mental health options in their area and Mr. Fugate is unable to go to the ones that are available because they bring up bad memories of his relationship between his mother and him. (R. 77). Any other mental health option is further outside Mr. Fugate's hometown and would require him to break up his routine, which Mr. Glick testified is what helps "keep him level." (R. 78). The Presentence Report also stated: "Prior reports indicate he was given a diagnosis of Autism, however his parents never sought out services for him." (R. 197).

But, again, the ALJ made no mention of these facts when he emphasized Mr. Fugate's lack of mental health treatment. Moreover, the ALJ never examined whether mental illness or anxiety played a role in Mr. Fugate's inconsistent treatment, noncompliance with treatment, or a lack of treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself."). If Mr. Fugate's anxiety played a role in the lack of treatment, then an adverse credibility finding based on these expressions of poor mental health is improper. *Hart v. Astrue*, 2008 WL 3456864, at *9 (W.D. Wis. 2008). Before drawing an adverse inference from Mr. Fugate's failure to pursue medical treatment for his anxiety or receive skill training for a job search, the ALJ should have considered Mr. Glick's explanation or other evidence in the record that could demonstrate why treatment was not sought. SSR 96-7p.

Therefore, the Court cannot conclude that the ALJ's decision to discount Mr. Fugate's lack of mental health treatment is supported by substantial evidence. That error is not harmless. If, on remand, the ALJ decides to give greater weight to Mr. Fugate's subjective complaints and limitations in addition to Mr. Glick's testimony, that could result in a more restrictive RFC

12

finding especially related to his anxiety. Accordingly, the remedy for the shortcomings noted herein is further consideration by an ALJ.

## V.  CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:  July 20, 2020

       /s/ JON E. DEGUILIO
Chief Judge
United States District Court